UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ANASTASIA VITKINA,                                          :

                           Plaintiff,                :        19 Civ. 3262

        - against -                                :        <u>COMPLAINT</u>

ABRAHAM BENALLOUL,                                    :        <u>JURY TRIAL DEMANDED</u>

                     Defendant.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Plaintiff Anastasia Vitkina, by her attorneys named below, for her complaint against defendant Abraham Benalloul, respectfully alleges:

**Jurisdiction**

      1.     The jurisdiction of this Court over the within action rests upon 28 U.S.C. § 1332(a)(2), in that there is complete diversity of citizenship between plaintiff and defendant, respectively a citizen or subject of a foreign state lawfully residing in the United States, and a citizen of a state other than the state of residence of plaintiff, and the amount in controversy, without interest or costs, exceeds the sum or value specified by 28 U.S.C. § 1332(a), all as more fully appears below.

**Nature of the Action**

      2.     This is an action for sexual battery, for sexual assault, for violation of the New York City Victims of Gender-Motivated Violence Protection Act, New York City Administrative Code §§ 8-901 *et seq.*, for negligence, for malicious prosecution, for abuse of process, for false imprisonment, for intentional infliction of emotional distress, for negligent infliction of emotional distress, for tortious interference with prospective business relationships,

for conversion, and for defamation.  The action seeks compensatory damages of at least $5 million and punitive damages of $5 million, making in the aggregate damages of $10 million, together with plaintiff's medical and related costs incurred, and her attorneys' fees and costs of suit incurred in this action.  It also seeks temporary, preliminary, and permanent injunctive relief to restrain defendant from any contact or communication, direct or indirect, with plaintiff.

3.      The action and the claims alleged arise from defendant's sexual battery and assault on plaintiff, an assault which was the culmination of months of shocking, outrageous, and abusive conduct toward plaintiff.  The action and the claims alleged also arise from defendant's false report to the New York Police Department, which prompted plaintiff's arrest and prosecution for alleged criminal conduct (charges later dismissed by the court upon motion from the New York County District Attorney's office), from defendant's lies about plaintiff, which have damaged her reputation and caused her both humiliation and reputational injury, and from defendant's unprivileged retention of plaintiff's business property.

4.      Because of defendant's conduct, plaintiff sustained serious physical, emotional, and mental injuries, injury to the integrity of her person, injury to her reputation, and injury to her property and business.  Plaintiff is accordingly entitled to compensatory and punitive damages as prayed for in this complaint or as may be awarded by the trier of fact.  As authorized by statute, Plaintiff is also entitled to her attorneys' fees and costs of suit incurred, and to temporary, preliminary, and permanent injunctive relief to restrain defendant from contact or communication with plaintiff and from his continuing course of wrongful conduct toward plaintiff.

**Parties**

5.      Plaintiff Anastasia Vitkina ("Vitkina") resides in New York City, New York, is a citizen of the nation of Uzbekistan, and is a lawful permanent resident of the United States, holding a Green Card.

6.      Defendant Abraham Benalloul ("Benalloul") is a male individual residing in Miami Beach, Florida, and is a citizen of the State of Florida.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

7.      Plaintiff Vitkina is 36 years of age and a single woman.  She has never been married.  She was born in Uzbekistan and raised in Russia.  In the 1990s, as a foreign exchange student, she visited the United States, and in 1998 she emigrated to America, living in several places, but eventually settling in New York City.  Plaintiff graduated from the Parsons School of Design in New York City.  She has been employed in fashion and interior design, in the former area designing her own line of women's handbags, and has conducted an active and successful business, working both for herself and others, in those fields.

8.       Defendant Benalloul is also an immigrant to the United States, having emigrated from Morocco.  At the times of the events described below, he was apparently employed as a high-end real estate broker in New York City.  Defendant Benalloul is in his 50s. He has five children, four from a dissolved marriage, and one with a former mistress.  His relations with his children, his former wife, and his former mistress are poor and contentious, both emotionally and financially.

9.      Plaintiff and defendant Benalloul were introduced by a common acquaintance in or about April 2016.  Benalloul pursued plaintiff avidly.  He declared that he

was blinded with love for her.  They entered a romantic and intimate relationship.  Plaintiff moved into defendant Benalloul's apartment with him.

10.     While at first Benalloul behaved like a normal suitor, and a normal human being, his behavior rapidly changed.

11.     Within weeks of their first becoming intimate, defendant Benalloul became obsessed with plaintiff.  He began to telephone her incessantly and would not leave her alone.  He acted in a controlling manner regarding many aspects of her personal life, seeking to shut her out of existing relationships with both men and women, and acting in a hostile manner if she did not accede to his wishes.  His obsessive conduct began to interfere with plaintiff's work.

12.     Defendant Benalloul also began to act aggressively and abnormally. Plaintiff had introduced Benalloul to her circle of friends.  He began to flirt openly with her girlfriends, going so far as to request their telephone numbers in plaintiff's presence and, on at least one occasion, imposing himself physically on one of her friends through unwanted physical contact, also in plaintiff's presence.

13.     Defendant Benalloul became intensely jealous of plaintiff.  He would demand that she account for her whereabouts at every moment of the day.  He insisted that he know every person she spoke to.  Even while he continued to flirt with her girlfriends, defendant Benalloul began to attempt to separate her from them, to isolate her from her friends.

14.     Defendant Benalloul began to act highly critically of plaintiff, complaining of her taste, and, as one example only, deprecating art that she liked.  He began to employ insults and abusive language toward her on several occasions; as one example only, as she was dressing to go out and join friends for an evening, he called her "fat" and "ugly."

15.     Defendant Benalloul began to act in a threatening manner.  His behavior with plaintiff was pervaded by shouting, threatening, and abusive language.

16.     His criticism and verbal abuse would reduce plaintiff to tears.  He would then insist that she go out with him, pretending that his conduct and her reaction had not occurred, that nothing had happened between them.  On several occasions, he provoked fights in public with plaintiff, and plaintiff's friends had to calm and comfort her.  On some occasions, his behavior was so abusive that plaintiff would simply leave him.

17.      Defendant Benalloul also began to interfere actively with plaintiff's work.  As part of that work, plaintiff frequently conducted photo shoots of her designs, employing female models for that purpose.  Defendant Benalloul would bring numerous male friends to the borrowed locations in which she was conducting shoots.  He and his friends would insist on drinking alcohol and using illicit and illegal drugs during the shoots.  They would act loudly and boisterously.  They would spy on the models as they changed their clothes.  All in all, they would act like spoiled, indulged, and out-of-control adolescents.

18.     During all the time that this conduct occurred, plaintiff would complain to defendant Benalloul.  He would respond in two ways, first laughing off her complaints, and then later acting penitently and begging for forgiveness, saying he would change his behavior.

19.     Notwithstanding his promises, nothing changed.  In fact, his behavior worsened.

20.     The virtually constant berating, belittling, and use of profanity toward plaintiff took its toll.  Plaintiff grew scared, depressed, and anxious.  She began to doubt her self-worth and began to lose respect for herself.

21.     Defendant Benalloul began drinking heavily in plaintiff's presence.  His use of illegal drugs, principally cocaine, became both more frequent and greater in quantity, and he would use these drugs in combination with alcohol.  When he was high, he would often lose control, speaking loudly and boisterously, and acting aggressively towards others, including towards plaintiff.

22.     Notwithstanding his conduct, plaintiff believed that defendant Benalloul was in love with her, and she reciprocated that love.  While his misconduct mounted, his protestations that he would reform mounted as well.  Plaintiff stayed with him.

23.     Since their sexual relationship began, defendant Benalloul had always been rough with plaintiff.  He also had a large sexual appetite.  He would force himself upon plaintiff, insisting on having sex with her even when she did not want to, and even when she told him so.  He did not care; he ignored her, and did what he wanted.

24.     Defendant Benalloul's use of prodigious quantities of alcohol and cocaine exacerbated his sexual violence and abusive conduct.  While the combined effects of copious quantities of these substances was to render him impotent, that did not make him sexually harmless.  Instead, he would react by downing Cialis™, a drug for the treatment of erectile dysfunction, and recover his potency sufficiently to force himself sexually on plaintiff.  And, while the drug would make him potent, his intoxication apparently also enabled him to ignore plaintiff's physical reactions, and to hurt her while having sex.  While she strenuously objected, he continued, and did not listen to her complaints or direction.

25.     Defendant Benalloul's sexual abuse mounted.  He began to insist on sex whenever he wanted it, over plaintiff's objections.  His sex became increasingly forcible, and

he began to hurt plaintiff regularly during sex.  He would ignore her asking him to stop, and he would ignore her complaints about the pain he was inflicting.

26.     Defendant Benalloul would insist on having sex without protection, forcing plaintiff to do so over her protests, and ejaculating inside of her, risking a pregnancy she did not want.  He would not listen to her protestations.  His response was to laugh at her, belittle her, curse at her.

27.     Defendant Benalloul's sexual abuse reached a culmination when, in June 2016, defendant insisted on having sex when plaintiff did not want it and did not consent to it. Despite her refusal and lack of consent, during rough sex he injured her lower back and spine to the extent that she had literally to lie flat on the floor to control the pain.  On this occasion, as on others, he refused to stop forcible sex with her even while she was crying out in pain and asking him to stop.

28.     In short, and in plain language, defendant Benalloul raped her.  He violated numerous provisions of Part 130 of the Penal Law of the State of New York.

29.     Because of the injuries she sustained, plaintiff was constrained to seek chiropractic and other care.

30.     But once again, defendant promised plaintiff he would reform.  He begged forgiveness, saying he loved her.

31.     In late January 2017, defendant Benalloul contracted a serious infection, evidenced by skin eruptions in the perianal region. Defendant required treatment at a New York hospital.  Plaintiff spent a full day accompanying him in the emergency room and arranging his admission and care.  He was released.  Despite the serious and contagious infection, he insisted on having sex.  Plaintiff again drew the line, and said no.  For once, he obeyed.

32.     Defendant Benalloul needed an apartment and had invited plaintiff to help him search for one in which they would live together.  Plaintiff accompanied him for four (4) months on a hunt for an apartment, seeking, and finally locating, one.  She moved in with defendant on February 1, 2017, with all her belongings and with the tools of her trade.

33.     This was the eve of New York Fashion Week, an important if not critical time for plaintiff's business.  Plaintiff had a trunk showing of her wares the next day in conjunction with the show.

34.     Plaintiff left the apartment after 9:00 p.m. to have dinner with a colleague and discuss the upcoming show.  Defendant acted sullenly when she told him she was going out and demanded the details of who she would meet and where and when.  This was apparently, in defendant Benalloul's eyes, the proverbial straw, or rather the fuse for his rage.  His abusive misconduct reached its culmination in the early morning hours of February 2, 2017, when plaintiff returned home after midnight.  She returned to a nightmare.

35.     Defendant Benalloul was in a rage.  He swore at plaintiff.  He screamed at her, saying, "You're a Russian whore, get out of my house; you're a liar, and I'm going to have you deported."  He attempted to force her to leave the apartment in the middle of the night.  He was acting in a violent and out-of-control manner.

36.     Finally, defendant Benalloul physically attacked plaintiff.  He hit her, causing bruises and contusions.  He attempted to pin her down on the bed in their bedroom.  She pushed him away from her.  In doing so, she inadvertently scratched his arm and shoulder.

37.     Plaintiff was in fear for her life.  Defendant is twice her size, and far more powerful, and she reasonably believed that he would seriously hurt or kill her.  As the level of his rage escalated, plaintiff ultimately decided to call the police.

38.     But defendant apparently overheard her doing so.  He immediately began to take photographs with his phone of the scratches on his arm and shoulder, and then he apparently called the police as well.  Plaintiff did not hear him do so.

39.     Before the police arrived, plaintiff telephoned the colleague and friend with whom she had been working the prior evening before she returned home to defendant's assault.  She left a message for her friend that she had called the police and that she was scared.

40.     Two teams of police eventually arrived.  Defendant Benalloul made a false report of the incident, claiming that plaintiff had precipitated it and exaggerating the extent of his inadvertently caused scratches.  Unfortunately, perhaps because plaintiff is a woman and because her English-speaking skills are not perfect, the police decided to arrest her, not him.

41.     Plaintiff was taken into custody and charged with violations of the New York Penal Law.  The police took her away for processing and booking.

42.     In the morning, plaintiff's friend retrieved the voicemail plaintiff had left.  She called defendant Benalloul as she could not reach plaintiff, and when he told her he had had plaintiff arrested, she asked him to get plaintiff a lawyer.  He responded to plaintiff's colleague, "Tell her to hire her own lawyer.  I am not going to hire a lawyer.  Let her remain in prison; that will teach her a lesson."  He hung up.

43.     Adding insult to injury, upon plaintiff's arrest, defendant Benalloul immediately began to call her friends, telling them falsely that she was crazy, that she had attacked and injured him, and that he was going to press the charges of assault to conviction.  Defendant further wrongfully retained plaintiff's business property that she had stored at their apartment, including items and materials vital to her trunk show at New York Fashion Week.

9

As a result of defendant's wrongful retention of plaintiff's business property, plaintiff was unable to show at Fashion Week as planned, causing damage to her business.

44.     The attacks described above caused plaintiff substantial and serious physical, mental, and emotional injury.  These injuries include, without limitation, contusions, bruising, inflammation, headache due to head injury, pain, anxiety, depression, paranoia, nightmares, and apprehension of leaving her home and going out in public for fear that she would encounter defendant.

45.     While plaintiff's physical wounds have healed, the mental and emotional injury endures and will endure.

46.     In short, because of the violent conduct directed to her and the injuries she has sustained at defendant Benalloul's hands, plaintiff remains fearful, paranoid, in virtually constant emotional and mental pain, and helpless to recover.

47.     Defendant Benalloul's conduct, as described herein, was outrageous and extreme, and justifies the assessment of substantial punitive damages.  No woman, no person, should ever have had to suffer such abuse.  Defendant should be held strictly accountable, in damages and otherwise, for his conduct.

48.     Following plaintiff's arrest, an order of protection issued against her. Nonetheless, defendant Benalloul began to stalk plaintiff, turning up in public places with her friends and challenging her to have contact with him, presumably so that she would violate the order of protection.

49.     This course of conduct continued.  When the criminal charges against plaintiff were dismissed, the order of protection was automatically dissolved.

50.     Defendant Benalloul persisted in showing up in public places where he would encounter plaintiff, implicitly threatening and terrorizing her.

51.     This course of conduct has continued until the present and threatens to continue unless defendant Benalloul is not restrained.

## FIRST CLAIM FOR RELIEF
### (Sexual Battery)

52.     Plaintiff repeats and realleges each allegation contained in paragraphs "1" through "51" of this verified complaint as if fully set forth at length herein as paragraph "51" hereof.

53.     Defendant Benalloul's repeated sexual assaults upon plaintiff constituted intentional wrongful physical contact with plaintiff without her consent.

54.     In engaging in the foregoing conduct, defendant Benalloul committed the tort of battery against plaintiff.

55.     Plaintiff sustained serious and substantial physical and mental injury because of such tortious conduct.  Those injuries include, but may not be limited to, the injuries described in paragraph "44" of this complaint.

56.     Plaintiff is entitled to recover compensatory damages from defendant for such injuries.

57.     Defendant's conduct was outrageous and extreme, and unacceptable in civilized society.  It fully justifies an award of punitive damages in an amount sufficient to deter defendant and others from further such conduct and to punish him in the view of society.

58.     Plaintiff is entitled to recover her damages as against defendant Benalloul, in the amount of $5 million in compensatory damages and $5 million in punitive damages, or in such other amounts as the trier may ultimately determine.

## SECOND CLAIM FOR RELIEF
**(Sexual Assault)**

59.     Plaintiff repeats and realleges each allegation contained in paragraphs "1" through "58" of this verified complaint as if fully set forth at length herein as paragraph "59" hereof.

60.     By engaging in the conduct detailed in this complaint, defendant Benalloul placed plaintiff in apprehension of imminent physical and mental injury and offensive contact, and the effects continue; she is fearful and afraid of venturing out in public; she is afraid of encountering defendant, and of the humiliation he will seek to inflict on her.

61.     Because of the foregoing, defendant Benalloul committed the tort of assault against plaintiff.

62.     Plaintiff sustained serious and substantial physical, mental, and emotional injury because of such tortious conduct.  Those injuries include, but may not be limited to, the injuries described in paragraph "44" of this complaint.

63.     Plaintiff is entitled to recover compensatory damages from defendant Benalloul for such injuries.

64.     Defendant's conduct was outrageous and extreme, and unacceptable in civilized society.  It fully justifies an award of punitive damages in an amount sufficient to deter defendant and others from further such conduct and to punish him in the view of society.

65.     Plaintiff is entitled to recover her damages as against defendant Benalloul, in the amount of $5 million in compensatory damages and $5 million in punitive damages, or in such other amounts as the trier may ultimately determine.

## THIRD CLAIM FOR RELIEF
### (Violation of the New York City Victims of Gender-Motivated Violence Protection Act, New York City Administrative Code §§ 8-901 *et seq*.)

66.    Plaintiff repeats and realleges each allegation contained in paragraphs "1" through "65" of this verified complaint as if fully set forth at length herein as paragraph "66" hereof.

67.    Section 8-904 of the Victims of Gender-Motivated Violence Protection Act, New York City Administrative Code §§ 8-901 *et seq*. (the "Act"), gives a victim of gender-motivated violence a private right of action to sue the perpetrator for compensatory and punitive damages, for injunctive relief, and for other relief, including attorneys' fees and the costs of suit.

68.    Defendant Benalloul's conduct described here constitutes a "crime of violence" as such crimes are defined in Section 8-903 of the Act.

69.    Specifically, defendant Benalloul committed at least the following crimes punishable as felonies or misdemeanors under New York law:  New York Penal Law § 120.00 (Assault in the third degree, Class A misdemeanor); § 120.05 (Assault in the second degree, Class D felony); § 120.10 (Assault in the first degree, Class B felony); § 120.14 (Menacing in the second degree, Class A misdemeanor); § 120.15 (Menacing in the third degree, Class B misdemeanor); § 120.20 (Reckless endangerment in the second degree, Class B misdemeanor); § 120.25 (Reckless endangerment in the first degree, Class D felony); § 130.20 (Sexual misconduct, Class A misdemeanor); § 130.25 (Rape in the third degree, Class D felony); § 130.35 (Rape in the first degree, Class B felony); § 130.52 (Forcible touching, Class A misdemeanor); § 130.55 (Sexual abuse in the third degree, Class B misdemeanor); § 130.65

(Sexual abuse in the first degree, Class D felony); § 240.25 (Harassment in the first degree, Class B misdemeanor).

70.     Defendant's conduct presented a serious risk of injury to plaintiff and actually resulted in injury to plaintiff.  Defendant's conduct was directed against plaintiff.

71.     Defendant's conduct constituted a crime of violence motivated by gender in that he committed the crime because of gender or on the basis of gender, and the commission of the crime was due, at least in part, to an animus based on plaintiff's gender, satisfying the requirements of Section 8-904 of the Act.

72.     By engaging in the foregoing conduct, defendant Benalloul violated the Act, and plaintiff was injured thereby.

73.     Under the Act, a person injured by prohibited conduct is entitled to recover compensatory and punitive damages, attorneys' fees and costs of suit, and other relief appropriate to the circumstances, including injunctive relief.

74.     Plaintiff is entitled under the Act to recover her damages as against defendant Benalloul, in the amount of $5 million in compensatory damages and $5 million in punitive damages, to preliminary and permanent injunctive relief to prevent defendant from continuing to harass, threaten, and intimidate plaintiff and from his continuing course of defamation of her character, to her costs incurred for medical and related care, and to her attorneys' fees incurred herein as well as the costs and expenses of this suit.

## FOURTH CLAIM FOR RELIEF
### (Negligence)

75.     Plaintiff repeats and realleges each allegation contained in paragraphs "1" through "74" of this verified complaint as if fully set forth at length herein as paragraph "75" hereof.

76.     Defendant Benalloul knew or should have known that his ingestion and use of alcohol and illegal drugs, including cocaine, exacerbated his violent tendencies and thus made him a danger to those around him, including plaintiff.

77.     Defendant Benalloul owed plaintiff a duty of care to act reasonably and safely, and not to place others around him, including plaintiff, in danger of from his violent tendencies.  He breached that duty by using alcohol and illegal drugs, and by continuing to drink alcohol and use illegal drugs even though he knew he had a proclivity toward violence and would become violent as a result.  In engaging in the foregoing conduct, defendant Benalloul acted negligently and recklessly, ignoring a risk of substantial and serious injury to plaintiff.

78.     As a result of defendant's breach of duty, plaintiff sustained serious and substantial physical, mental, and emotional injuries.  Those injuries include, but may not be limited to, the injuries described in paragraph "44" of this complaint.

79.     By reason of the foregoing, defendant Benalloul committed the tort of negligence against plaintiff.

80.     Plaintiff is entitled to recover compensatory damages from defendant Benalloul for her injuries.

81.     Defendant's conduct was outrageous and extreme, and unacceptable in civilized society.  It fully justifies an award of punitive damages in an amount sufficient to deter defendant and others from further such conduct and to punish him in the view of society.

82.     Plaintiff is entitled to recover her damages as against defendant Benalloul, in the amount of $5 million in compensatory damages and $5 million in punitive damages, or in such other amounts as the trier may ultimately determine.

## FIFTH CLAIM FOR RELIEF
### (Malicious Prosecution)

83.     Plaintiff repeats and realleges each allegation contained in paragraphs "1" through "82" of this verified complaint as if fully set forth at length herein as paragraph "83" hereof.

84.     Defendant Benalloul commenced a criminal proceeding against plaintiff by calling the police and filing a false criminal complaint.  This criminal proceeding terminated in plaintiff's favor.

85.     There was no probable cause for the criminal proceeding, and defendant Benalloul commenced the proceeding out of his malice toward plaintiff.

86.     Plaintiff suffered special injuries as a result, including, but not limited to, the humiliation of being arrested and treated like a criminal, and the deprivation of her freedom.

87.     Because of the foregoing, defendant Benalloul committed the tort of malicious prosecution against plaintiff.

88.     Plaintiff sustained serious and substantial mental and emotional injury because of such tortious conduct.  Those injuries include, but may not be limited to, the injuries described in paragraph "44" of this complaint.

89.     Plaintiff is entitled to recover compensatory damages from defendant for such injuries.

90.     Defendant Benalloul's conduct was outrageous and extreme, and unacceptable in civilized society.  It fully justifies an award of punitive damages in an amount sufficient to deter defendant and others from further such conduct and to punish him in the view of society.

91.     Plaintiff is entitled to recover her damages as against defendant Benalloul, in the amount of $5 million in compensatory damages and $5 million in punitive damages, or in such other amounts as the trier may ultimately determine.

### SIXTH CLAIM FOR RELIEF
### (Abuse of Process)

92.     Plaintiff repeats and realleges each allegation contained in paragraphs "1" through "91" of this verified complaint as if fully set forth at length herein as paragraph "92" hereof.

93.     With an intent to do harm without excuse or justification, defendant Benalloul used regularly issued criminal process in a perverted manner to obtain the collateral objective of harming and humiliating plaintiff.

94.     By engaging in the foregoing conduct, defendant Benalloul committed the tort of abuse of process against plaintiff.

95.     Plaintiff suffered serious and substantial emotional distress because of defendant's unlawful and outrageous conduct.

96.     Defendant's conduct was outrageous and extreme, and unacceptable in any civilized society.  It fully justifies an award of punitive damages in an amount sufficient to deter defendant and others from further such conduct and to punish him in the view of society.

97.     Plaintiff is entitled to recover her damages as against defendant Benalloul, in the amount of $5 million in compensatory damages and $5 million in punitive damages, or in such other amounts as the trier may ultimately determine.

## SEVENTH CLAIM FOR RELIEF
### (False Imprisonment)

98.     Plaintiff repeats and realleges each allegation contained in paragraphs "1" through "97" of this verified complaint as if fully set forth at length herein as paragraph "98" hereof.

99.     In committing battery and assault upon plaintiff, defendant Benalloul intended to confine, and did confine, plaintiff against her consent and without legal authority or lawful privilege for an appreciable length of time.  Plaintiff was conscious of her confinement by defendant.

100.     By engaging in the foregoing conduct, defendant Benalloul committed the tort of false imprisonment against plaintiff.

101.     Plaintiff sustained serious and substantial emotional injury because of defendant Benalloul's unlawful and outrageous conduct.

102.     Defendant's conduct was outrageous and extreme, and unacceptable in any civilized society.  It fully justifies an award of punitive damages in an amount sufficient to deter defendant and others from further such conduct and to punish him in the view of society.

103.     Plaintiff is entitled to recover her damages as against defendant Benalloul, in the amount of $5 million in compensatory damages and $5 million in punitive damages, or in such other amounts as the trier herein may determine.

## EIGHTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

104.     Plaintiff repeats and realleges each allegation contained in paragraphs "1" through "103" of this verified complaint as if fully set forth at length herein as paragraph "104" hereof.

18

105.     Defendant Benalloul engaged in extreme and outrageous conduct with the intent to cause plaintiff severe emotional distress. Defendant's conduct caused plaintiff serious and substantial injury in the form of severe emotional distress.

106.     By reason of the foregoing, defendant Benalloul committed the tort of intentional infliction of emotional distress against plaintiff.

107.     Defendant's conduct was outrageous and extreme, and unacceptable in any civilized society.  It fully justifies an award of punitive damages in an amount sufficient to deter defendant and others from further such conduct and to punish him in the view of society.

108.     Plaintiff is entitled to recover her damages as against defendant Benalloul, in the amount of $5 million in compensatory damages and $5 million in punitive damages, or in such other amounts as the trier herein may determine.

## NINTH CLAIM FOR RELIEF
### (Negligent Infliction of Emotional Distress)

109.     Plaintiff repeats and realleges each allegation contained in paragraphs "1" through "108" of this verified complaint as if fully set forth at length herein as paragraph "109" hereof.

110.     In his conduct toward plaintiff, including, but not limited to, his repeated sexual battery, defendant Benalloul breached a duty of care toward plaintiff.  As a direct result of this breach, plaintiff suffered severe emotional harm and mental injury.

111.     Plaintiff suffered serious and substantial emotional distress because of defendant's unlawful and outrageous conduct.

112.     In engaging in the foregoing conduct, defendant Benalloul acted recklessly and negligently, ignoring the risk of substantial and serious injury to plaintiff.

113.    By reason of the foregoing, defendant Benalloul committed the tort of negligent infliction of emotional distress against plaintiff.

114.    Defendant's conduct was outrageous and extreme, and unacceptable in any civilized society.  It fully justifies an award of punitive damages in an amount sufficient to deter defendant and others from further such conduct and to punish him in the view of society.

115.    Plaintiff is entitled to recover her damages as against defendant Benalloul, in the amount of $5 million in compensatory damages and $5 million in punitive damages, or in such other amounts as the trier herein may determine.

## TENTH CLAIM FOR RELIEF
### (Tortious Interference with Prospective Business Relationships)

116.    Plaintiff repeats and realleges each allegation contained in paragraphs "1" through "115" of this verified complaint as if fully set forth at length herein as paragraph "116" hereof.

117.    Defendant Benalloul's conduct detailed above, including his wrongful retention of the products plaintiff had planned to present at Fashion Week, interfered with plaintiff's business relationships with third parties. Defendant Benalloul intended to harm plaintiff through this conduct and used wrongful means to do so.

118.    By engaging in the foregoing conduct, defendant Benalloul committed the tort of tortious interference with prospective business relations against plaintiff.

119.    Plaintiff suffered damage to her business relationships as a result.

120.    Defendant's conduct was outrageous and extreme, and unacceptable in any civilized society.  It fully justifies an award of punitive damages in an amount sufficient to deter defendant and others from further such conduct and to punish him in the view of society.

121.     Plaintiff is entitled to recover her damages as against defendant Benalloul, in the amount of $5 million in compensatory damages and $5 million in punitive damages, or in such other amounts as the trier herein may determine.

## ELEVENTH CLAIM FOR RELIEF
### (Conversion)

122.     Plaintiff repeats and realleges each allegation contained in paragraphs "1" through "121" of this verified complaint as if fully set forth at length herein as paragraph "122" hereof.

123.     In wrongfully retaining the products plaintiff intended to show at Fashion Week, defendant Benalloul exercised dominion over and interfered with property in which plaintiff had a possessory right and interest, in derogation of plaintiff's rights.

124.     By engaging in the foregoing conduct, defendant Benalloul committed the tort of conversion against plaintiff.

125.     Plaintiff sustained serious financial and emotional injury because of defendant Benalloul's unlawful and outrageous conduct.

126.     Defendant's conduct was outrageous and extreme, and unacceptable in any civilized society.  It fully justifies an award of punitive damages in an amount sufficient to deter defendant and others from further such conduct and to punish him in the view of society.

127.     Plaintiff is entitled to recover her damages as against defendant Benalloul, in the amount of $5 million in compensatory damages and $5 million in punitive damages, or in such other amounts as the trier herein may determine.

## TWELFTH CLAIM FOR RELIEF
### (Defamation)

128.    Plaintiff repeats and realleges each allegation contained in paragraphs "1" through "127" of this verified complaint as if fully set forth at length herein as paragraph "128" hereof.

129.    Defendant Benalloul intentionally and recklessly made false statements about plaintiff to law enforcement officials and other third parties without privilege or authorization.

130.    By engaging in the foregoing conduct, defendant Benalloul committed the tort of defamation against plaintiff.

131.    Plaintiff suffered special harm because of defendant Benalloul's unlawful and outrageous conduct.

132.    Defendant's conduct was outrageous and extreme, and unacceptable in any civilized society.  It fully justifies an award of punitive damages in an amount sufficient to deter defendant and others from further such conduct and to punish him in the view of society.

133.    Plaintiff is entitled to recover her damages as against defendant Benalloul, in the amount of $5 million in compensatory damages and $5 million in punitive damages, or in such other amounts as the trier may ultimately determine.

WHEREFORE, plaintiff demands judgment against defendant Benalloul in the sum of $5,000,000 for her compensatory damages and in the sum of $5,000,000 in the form of

punitive damages, together with applicable prejudgment interest, the costs of this action, and

such other and further relief as the Court may deem just and proper in the circumstances.

Dated:  New York, New York
         April 11, 2019

                                    KARLINSKY LLC

                                    By: /s/ Martin E. Karlinsky____
                                           Martin E. Karlinsky, Esq.
                                           Bonnie H. Walker, Esq.
                                    103 Mountain Road
                                    Cornwall-on-Hudson, New York 12520
                                    (646) 437-1430
                                    martin.karlinsky@karlinskyllc.com
                                    bonnie.walker@karlinskyllc.com

                                    *Attorneys for Plaintiff*